IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
                                 )
Joyce A. CHANDLER,               )
                                 )
                  Plaintiff,     )
                                 )
           vs.                   )    Civ. No. 10-00487 ACK-KSC
                                 )
WASHINGTON MUTUAL BANK, F.A.,    )
et al.,                          )
                                 )
                  Defendants.    )
                                 )
```

### ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS JP MORGAN CHASE, N.A., AND CHASE HOME FINANCE, LLC's MOTION FOR SUMMARY JUDGMENT; AND (2) DIRECTING PLAINTIFF TO JOIN ADDITIONAL PARTIES

### I. PROCEDURAL BACKGROUND

On June 17, 2010, Joyce Chandler filed a complaint in the Circuit Court of the First Circuit, State of Hawai'i, against Washington Mutual Bank, F.A. ("Washington Mutual" or "WaMu"); JP Morgan Chase, N.A.; Chase Home Finance, LLC; and ERMS Corp., doing business as Executive Mortgage & Financial Services ("ERMS"). Doc No. 1, Ex. 1. JP Morgan Chase and Chase Home Finance (collectively, "Defendants") removed the case to this Court on August 23, 2010. Doc No. 1. On April 12, 2011, Defendants filed the instant motion for summary judgment ("Motion"). Doc. No. 17. The Motion was supported by a memorandum, a concise statement of facts ("Defs.' CSF"), a

-1-

declaration by Carlos Barrios, and supporting exhibits.  Doc. Nos. 17-18.  On September 16, 2011, Chandler filed a memorandum in opposition to the Motion ("Opp'n"), which was supported by a concise statement of facts ("Pl.'s CSF"), declarations by Chandler and her attorney Gary Dubin, and exhibits.  Doc. Nos. 27-32.[1]  On September 22, 2011, Defendants filed a reply memorandum in support of the Motion ("Reply").  Doc. No. 38.  The Court held a hearing on Defendants' Motion on October 3, 2011.[2]

---

[1] On September 13, 2011, the Court noted that Chandler had failed to file an opposition the day before, when it was due under the local rules.  When a party fails to make a timely filing, it is the Court's practice to inquire whether the party intends to file something.  The Court contacted Chandler's attorneys on September 13, and one of them informed the Court that he had mistakenly thought the opposition was due the subsequent week.  On September 16, Chandler filed an untimely opposition and an ex parte application to modify the briefing schedule.  Doc. No. 34.  In light of Chandler's dilatory opposition, the Court allowed Defendants an additional six days to file their reply.  Doc. No. 33.  On September 20, Defendants opposed Chandler's ex parte motion and requested that Chandler's opposition be stricken or disregarded.  Doc. No. 36.  Defendants noted that Chandler had no good excuse for missing the filing deadline.  Although the Court agreed, the Court denied Defendants' request on the same day because it found that Defendants had not shown they were prejudiced.  Doc. No. 37. Nonetheless, the Court now reminds Chandler's counsel, who apparently "has made a habit of filing papers late," that he must "follow the rules of this court and [that] further violation of this court's rules may result in sanctions." Beazie v. Amerifund Fin., Inc., Civ. No. 09-00562 JMS-KSC, 2011 WL 2457725, at *3 n.3 (D. Haw. June 16, 2011).

[2] The Court notes that ERMS has not entered an appearance in this case, and it appears from the docket that this defendant has not been served.  At the hearing, Plaintiff's counsel conceded that the defendant has not been served and indicated that he intends to voluntarily dismiss the claims against ERMS.

(continued...)

-2-

At the hearing, the Court granted leave for the parties to file supplemental briefs. The parties did so on October 18, 2011, and Defendants filed an additional response on October 25, 2011. Doc. Nos. 41–43.[3]

## II. FACTUAL BACKGROUND[4]

On February 23, 2007, Chandler refinanced an existing loan on her house, located at 44-097 Kalenakai Place, Kaneohe, Hawaiʻi, 96744, by executing a $1.6 million dollar promissory note ("Note") in favor of Washington Mutual.[5] Pl.'s CSF ¶¶ 1,

---

[2] (...continued)
At the time of this writing, Plaintiff's counsel has not yet done so.

[3] Defendants ask the Court to strike portions of Chandler's supplemental brief, on the basis that Chandler "had no right to address" the issue of the chain of title, which, Defendants state, only they were ordered to brief. Doc. No. 43 at 5–6. The Court did not preclude Chandler from briefing the chain-of-title issue at the hearing, and declines to strike Chandler's discussion of that issue. The Court agrees with Defendants that Chandler's supplement failed to address the question of Chandler's ability to tender, which Chandler was directed by the Court to address.

[4] The facts as recited in this order are for the purpose of disposing of the instant motion, and are not to be construed as findings of fact that the parties may rely on in future proceedings.

[5] Chandler has suggested that the transaction is suspect in part because "'Washington Mutual Bank, F.A.,' Chandler's lender in 2007, completely ceased to exist by that name and in that legal capacity as of 2005." (Opp'n at 19.) But according to another court that has considered this question, "Washington Mutual Bank . . . continued to do business under the name Washington Mutual Bank, FA, in a number of states." Haynes v. JPMorgan Chase Bank, N.A., No. 3:10-CV-11 (CDL), 2011 WL 2581956,
(continued...)

19; Defs.' Ex. A.[5/]  The Note was secured by an adjustable rate mortgage ("Mortgage"), which was executed on the same day.  Pl.'s CSF ¶ 2; Defs.' Ex. B.  The Mortgage was recorded on March 1, 2007, in the Bureau of Conveyances of the State of Hawaiʻi, as Document No. 2007-037459.  Pl.'s CSF ¶ 3; Defs.' Ex. B. Washington Mutual was listed as the mortgagee.  Pl.'s CSF ¶ 4; Defs.' Ex. B.

As part of the subject loan transaction, Chandler signed the following closing documents: (1) a Uniform Residential Loan Application ("Application"), (2) a Truth in Lending Act Disclosure Statement ("TILA Disclosure"), (3) an Adjustable Rate Mortgage Loan Disclosure Statement ("ARM Disclosure"), and (4) a Notice of Right to Rescind (General) - Notice of Right to Cancel ("Cancellation Notice").  See Pl.'s CSF ¶¶ 6-11; Chandler Decl. ¶¶ 7-10; Defs.' Exs. D-G.

---

[5/] (...continued)
at *3 (M.D. Ga. June 29, 2011).  Based on the use of the name "Washington Mutual, F.A." on the transaction documents in this case, it appears to the Court that the company was doing business under that name when it entered into the subject transaction.

[6/] The $1.6 million included a refinancing of a $1.1 million loan and a cash payment to Chandler of nearly $500,000.  Defs.' Ex. D; Pl.'s Ex. 6.  The "reason for the cash out [was] to pay ourselves [i.e., Chandler and her husband] back for the use of funds for the construction loan that we paid personally." Defs.' Ex. C; see also Pl.'s CSF ¶ 5; Defs.' Ex. D at 3.  It is unclear from the record whether initial construction had been completed at the time of the subject transaction; that is, whether the home was yet habitable.

Chandler contends that she was required to sign these documents, as well as the Note and Mortgage, without being provided adequate time to read and understand their terms, which were not explained to her. Pl.'s CSF ¶ 22; Chandler Decl. ¶ 9. Chandler also states that she may not have signed the Application, which exaggerated her income and assets without her knowledge; that she did not receive good faith estimates, complete TILA Disclosures, or two accurate and complete Cancellation Notices; and that ERMS and Washington Mutual misrepresented and changed the Note's terms during the closing process. See Pl.'s CSF ¶ 20-23; Chandler Decl. ¶¶ 7-10; Pl.'s Ex. 5.

Along these lines, Chandler's opposition to the motion for summary judgment includes a letter from a loan officer at ERMS, dated February 24, 2007, stating that "[i]t is my understanding that you will have at least ten (10) years before any large change in your monthly payments will occur." Pl.'s Ex. 5. The loan officer made this statement despite the TILA Disclosure, dated one day prior, which stated that the scheduled payment on the Note would nearly triple from the original payment amount approximately three and a half years from the time that the first payment was due. Defs.' Ex. E.

Finally, Chandler states that only after she signed the closing documents did she learn that ERMS "was being paid a yield

spread premium 'commission' of $16,000 and charging [her] an unheard of $6,108 for title insurance." See Pl.'s CSF ¶ 21; Chandler Decl. ¶ 8; Pl.'s Ex. 6.

On February 17, 2010, Chandler wrote Washington Mutual and Chase Home Finance seeking rescission. See Pl.'s CSF ¶ 14; Chandler Decl. ¶ 11; Defs.' Ex I. At the same time, Chandler wrote these companies requesting "the identity of the true owner and holder" of the Note and Mortgage. See Pl.'s CSF ¶¶ 14, 24; Chandler Decl. ¶ 12; Pl.'s Ex 9. On March 8, 2010, Chase Home Finance wrote Chandler that based on its analysis, "there [were] not any violations that would necessitate rescission of [the Note and Mortgage] under TILA." Pl.'s CSF ¶¶ 15, 26; Defs.' Ex J. Chase Home Finance's letter did not address Chandler's request regarding the "true owner and holder" of the Note and Mortgage. See Pl.'s CSF ¶ 26; Defs.' Ex J.

According to a declaration filed by Defendants, JP Morgan Chase is the servicer of the Note, but is not the current mortgagee. Newaz Decl. ¶ 7. JP Morgan Chase claims to have assigned on July 20, 2010, whatever interest it had in the Mortgage to Bank of America, N.A., successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2007-OA3 Trust ("BOA"). Id. ¶ 6.[7] The declaration

_____

[7] As will be discussed below, this statement is inconsistent with a Notice under Fair Debt Collection Practices
(continued...)

states that the current trustee is U.S. Bank, N.A., not BOA,

although it is not clear from the record if, when, or how BOA's

interest was transferred to U.S. Bank.  Id. ¶ 8.  In any event,

neither BOA nor U.S. Bank are currently parties to this action.

As noted above, Chandler filed the instant complaint on

June 17, 2010.  Doc No. 1, Ex. 1.  The complaint alleges claims

for rescission and damages under state and federal law, as well

as a claim for injunctive relief.

### III. LEGAL STANDARD

The purpose of summary judgment is to identify and

dispose of factually unsupported claims and defenses.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).  Summary

judgment is therefore appropriate if "the movant shows that there

is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"A party asserting that a fact cannot be or is genuinely disputed

must support the assertion," and can do so in either of two ways:

by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored

---

[7/] (...continued)
Act that Chandler received on May 19, 2010, from a firm called
Routh Crabtree Olsen, indicating that the firm had been retained
to initiate foreclosure proceedings on the subject property.
Pl.'s Ex. 12.  The notice stated that BOA was already the
creditor on the loan as of May 19, 2010.  At the hearing,
Chandler's counsel indicated that the May 19 notice was the
impetus for filing this action.

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[8/] Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Miller v. Glenn Miller Prods., 454 F.3d 975, 987

---

[8/] Disputes as to immaterial facts do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

(9th Cir. 2006).  The moving party may do so with affirmative

evidence or by "'showing'—that is, pointing out to the district

court—that there is an absence of evidence to support the

nonmoving party's case." Celotex, 477 U.S. at 325.[9/]  Once the

moving party satisfies its burden, the nonmoving party cannot

simply rest on the pleadings or argue that any disagreement or

"metaphysical doubt" about a material issue of fact precludes

summary judgment.  See Celotex, 477 U.S. at 324; Matsushita

Elec., 475 U.S. at 586; Cal. Architectural Bldg. Prods., Inc. v.

Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[10/]

---

[9/] When the moving party would bear the burden of proof at
trial, that party must satisfy its burden with respect to the
motion for summary judgment by coming forward with affirmative
evidence that would entitle it to a directed verdict if the
evidence were to go uncontroverted at trial.  See Miller, 454
F.3d at 987 (quoting C.A.R. Transp. Brokerage Co. v. Darden
Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  When the
nonmoving party would bear the burden of proof at trial, the
party moving for summary judgment may satisfy its burden with
respect to the motion for summary judgment by pointing out to the
court an absence of evidence from the nonmoving party. See id.
(citing Celotex, 477 U.S. at 325).

[10/] Nor will uncorroborated allegations and "self-serving
testimony" create a genuine issue of material fact.  Villiarimo
v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002);
see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,
809 F.2d 626, 630 (9th Cir. 1987); Johnson v. Wash. Metro. Area
Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal
of a factual question from the jury is most likely when a
plaintiff's claim is supported solely by the plaintiff's own
self-serving testimony, unsupported by corroborating evidence,
and undermined either by other credible evidence, physical
impossibility or other persuasive evidence that the plaintiff has
deliberately committed perjury."), cited in Villiarimo, 281 F.3d
at 1061.

The nonmoving party must instead set forth "significant probative evidence" in support of its position. <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (quoting <u>First Nat'l</u>, 391 U.S. at 290). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. See <u>Celotex</u>, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See <u>T.W. Elec. Serv.</u>, 809 F.2d at 630-31.[11/] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. <u>Anderson</u>, 477 U.S. at 250-51.

## IV. DISCUSSION

Chandler's complaint asserts four counts, of which Counts One, Three, and Four are against Defendants.[12/] Count One seeks rescission and damages on the ground that Defendants violated TILA. Count Three seeks rescission and damages on the ground that Defendants violated the Hawaiʻi Unfair and Deceptive

---

[11/] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence. <u>See Anderson</u>, 477 U.S. at 249; <u>Bator v. Hawaii</u>, 39 F.3d 1021, 1026 (9th Cir. 1994).

[12/] Count Two is a claim for common law rescission and damages and is asserted only against ERMS and Executive Mortgage.

Trade Practices Act ("UDAP"). And Count Four seeks injunctive relief. Defendants move for summary judgment as to each of the counts against them. After addressing Defendants' threshold argument that the P & A Agreement precludes all of the claims against them, the Court will address counts one, three, and four.[13]

## A.        P & A Agreement

        At the outset, Defendants argue that the Purchase & Assumption Agreement dated September 25, 2008, precludes all Chandler's claims against them. Motion at 6-8. The P & A Agreement provided that JP Morgan Chase would acquire from the Receiver of Washington Mutual "all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired)." <u>See</u> Defs.' Ex. H at 9. Pursuant to the P & A Agreement, JP Morgan Chase did not assume a broad range of potential liabilities. <u>See</u> Defs.' Ex. H at 9. In particular, Section 2.5 of the Agreement states:

> **Borrower Claims.** Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated

_____

        [13] Defendants' motion for summary judgment does not address the complaint's second count, which asserts a common law claim for rescission and damages against defendant ERMS only.

-11-

> or unliquidated, fixed or contingent, matured
> or unmatured, disputed or undisputed, legal
> or equitable, judicial or extrajudicial,
> secured or unsecured, whether asserted
> affirmatively or defensively, related in any
> way to any loan or commitment to lend made by
> the Failed Bank prior to failure, or to any
> loan made by a third party in connection with
> a loan which is or was held by the Failed
> Bank, or otherwise arising in connection with
> the Failed Bank's lending or loan purchase
> activities are specifically not assumed by
> the Assuming Bank.

Defs.' Ex. H at 9.

Chandler contends that "it is far from clear if JP Morgan Chase actually acquired Chandler's Note and Mortgage from the F.D.I.C. in the first place." Opp'n at 18; <u>see also</u> Pl.'s CSF ¶¶ 12-13.[14/]  It appears to the Court that the P & A Agreement likely applies in this case.  But the Court is troubled as to the inconsistencies in the record concerning the current holder of the mortgage's acquisition of its interest in the loan, as discussed below.

---

[14/] To the extent that Chandler's theory that Defendants lack "standing" to file a motion for summary judgment is based on this argument, the Court agrees that Defendants must show that Chandler's loan was acquired as part of the P & A Agreement in order to take advantage of the limitation of liability contained in that agreement in this case.  But that is not a question of standing.  Chandler sued Defendants.  They have "standing" to defend themselves.  <u>See</u> <u>Williams v. Rickard</u>, Civ. No. 09-00535 SOM-KSC, 2011 WL 2116995, at *5 (May 25, 2011) (explaining, in another case brought by Chandler's counsel, that standing "is a plaintiff's requirement, and Williams misconstrues the concept in arguing that Defendants must establish 'standing' to defend themselves").

Attached to Defendants' supplemental brief was a
declaration from a "Litigation Support Analyst" for JP Morgan
Chase, stating that Chandler's loan was purchased as part of the
P & A Agreement. Newaz Decl. ¶ 5. There is nothing in the
record that directly conflicts with this statement, which is the
basis for the Court's understanding that the P & A Agreement
likely applies.[15/] Yet the Court has some concern about the
accuracy of other statements in that declaration. The
declaration also states that "[o]n or around July 20, 2010, JPMC
assigned the Loan to Bank of America, National Association
("BOA") . . . ." This latter statement is supported in the
record by an "Assignment of Mortgage" from JP Morgan Chase to BOA
dated July 20, 1010. Defs.' Ex. K. But these statements
conflict with another document in the record: a "Notice under
Fair Debt Collection Practices Act" that was sent to Chandler on
May 19, 2010. Pl.'s Ex. 12. That notice indicates that BOA is
the creditor, even though it was sent two months before the
declaration and assignment indicate that BOA acquired its
interest. <u>Id.</u>

---

[15/] The Court notes that Chandler raises a concern about
whether the trust for which BOA was acting as trustee when it
acquired its interest in the subject loan was authorized to
obtain new interests in loans in 2010. (Pl.'s Supplemental Mem.
at 10; Pl.'s Ex. 27). The parties have not provided a sufficient
record on this issue to enable the Court to reach a
determination, and accordingly it remains as a material question
of fact.

In sum, the Court concludes that there is a genuine issue of material fact as to whether the P & A Agreement applies to the subject loan. But in any event, the P & A Agreement would not provide Defendants with a complete defense in this action. First, it "does not prevent claims based on Chase's conduct that occurred after September 25, 2008." <u>Rundgren v. Wash. Mut. Bank, F.A.</u>, Civ. No. 09-00495 JMS-KSC, 2010 WL 4960513, at *6 (D. Haw. Nov. 30, 2010). And second, "the P & A Agreement does not insulate a subsequent purchaser such as Chase from a rescission claim." <u>Id.</u> at *7. Further, those claims to which the P & A Agreement would apply fail regardless of the P & A Agreement, as will be discussed below.

**B.      <u>Truth in Lending Act Count</u>**

The complaint's first count seeks rescission and damages on the ground that Defendants violated TILA. Compl. ¶ 15. According to Chandler, Defendants are liable under TILA for violations that occurred when the subject loan was originated and also for failing to rescind the loan as requested. <u>See id.</u> ¶¶ 9-15; Opp'n at 8-18; 22-33.

The purpose of TILA is to assure a meaningful disclosure of credit terms so that consumers can understand more readily various available terms and avoid the uninformed use of credit. <u>See</u> 15 U.S.C. § 1601(a). TILA requires the lender to disclose to borrowers specific information, including providing

the borrower notice of his or her right to rescind a transaction. See, e.g., 15 U.S.C. §§ 1635, 1638. Regulation Z, 12 C.F.R. Part 226, is issued by the Board of Governors of the Federal Reserve System to implement TILA. See 12 C.F.R. § 226.1(a).

Defendants argue that Chandler's TILA claims are time-barred, and that Chandler's claim for rescission also fails because Chandler has not or cannot tender the loan proceeds. See Motion at 8-12; Reply at 4-11.

TILA provides borrowers two remedies for disclosure violations: (1) rescission, 15 U.S.C. § 1635; and (2) damages, 15 U.S.C. § 1640. Chandler seeks both, and the Court will address each remedy in turn.

### 1.    Rescission

In credit transactions in which a security interest in a consumer's principal dwelling is retained, TILA gives a consumer three days in which to rescind the transaction. 15 U.S.C. § 1635(a). If a lender fails to disclose to a borrower his or her right to rescind, or fails to provide material disclosures, the duration of the borrower's right to rescind extends for three years from the date the transaction was consummated or upon sale of the property, whichever occurs first. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); see also Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 703-05 (9th Cir. 1986).

-15-

At the hearing, the Court invited the parties to submit supplemental briefing concerning whether the mortgage transaction at issue here is an "exempted transaction" under TILA such that Chandler's rescission claim would fail as a matter of law. According to 15 U.S.C. § 1635(e)(1), TILA's rescission provision does not apply to "residential mortgage transactions," which are defined as "transaction[s] in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or <u>initial construction</u> of such dwelling." 15 U.S.C. § 1602(w) (emphasis added).

Whether the subject loan is an exempted transaction turns on whether the subject loan was used to build the subject home (or at least work on it at some point before it was habitable), or for some other purpose, such as to improve it after initial construction or to obtain post-construction refinancing. <u>See Perkins v. Cent. Mortg.</u>, 422 F. Supp. 2d 487, 490 (E.D. Pa. 2006) ("As long as any part of the loan proceeds is used for the construction, the loan qualifies as a residential mortgage transaction."); <u>id.</u> at 490-91 ("[A]ll stages of construction up to the time when the residence becomes habitable are within the meaning of initial construction."). In <u>Perkins</u>, the loan at issue was obtained to pay off an initial loan "and to complete the construction" of a new home "after the[] contractor walked off the job before finishing." <u>Id.</u> at 489. The court

determined that the second loan was therefore an exempted transaction. Id. at 491–92; see also Jurgens v. Nat'l City Mortg. Co., No. CV F 08-1021 LJO TAG, 2009 WL 530115, at *3-4 (E.D. Cal. Mar. 3, 2009) (determining that where "plaintiffs obtained an initial construction loan from First Horizon and later obtained the National loan to satisfy the First Horizon construction loan, to complete initial construction and to provide permanent financing," the later-obtained loan was an exempted transaction).

In contrast, a refinancing transaction that takes place after initial construction is complete is not an "exempted transaction." See See Frazile v. EMC Mortgage Corp., 382 F. App'x 833, 837–38 (11th Cir. 2010) (reversing a district court decision that relied on § 1635(e)(1) where "the mortgage at issue was obtained as part of a refinancing transaction" and not "to finance the acquisition or initial construction of such dwelling"); Barrett v. JP Morgan Chase Bank, N.A., 455 F.3d 874, 876, 879 (6th Cir. 2006) (determining that a refinancing of an acquisition loan was not an exempted transaction); see also Guinto v. Wells Fargo Bank, No. CIV. S-11-372 LKK/GGH, 2011 WL 2618893, at *7 n.23 (E.D. Cal. June 30, 2011) ("The . . . loan at issue here is alleged to be a 'refinancing' . . . not a loan to buy or build a home."); Zuniga v. HSBC Mortg. Corp., No. C09-03358 HRL, at *2 (N.D. Cal. Jan. 19, 2010) ("The mortgage at

issue in this case, as a refinance of an existing mortgage, was
subject to TILA's rescission provisions."); <u>Sueiro v. Countrywide
Home Loans, Inc.</u>, No. 09-21436-CIV, 2009 WL 2915781, at *1 (S.D.
Fla. Sept. 11, 2009) ("The plaintiffs' mortgage was not for the
acquisition or initial construction of a dwelling; it was a
refinancing mortgage on a property they already owned.
Therefore, [the] transaction is covered by the rescission
rules."); <u>cf. also</u> <u>Cranman v. Onewest Bank F.S.B.</u>, No. 1:10-CV-
0775-TWT-GGB, 2010 WL 4963016, at *4 (N.D. Ga. Nov. 1, 2010)
("Even if plaintiff's loan transaction were a mortgage
refinancing transaction, and thus subject to TILA's notice and
rescission provisions, the rescission period is only extended
until three years after consummation of the transaction."); <u>Watts
v. Decision One Mortg. Co.</u>, No. 09 CV 0043 JM(BLM), 2009 WL
648669, at *4 (S.D. Cal. Mar. 9, 2009) ("[W]hile home equity
loans and refinancing transactions would be amenable to
rescission, Plaintiff's purchase money mortgage is not.").

It is unclear from the record whether the refinancing
at issue in this case took place before or after the home was
habitable.  Despite the Court's request, the parties have not
specifically addressed the question whether the subject
transaction took place before or after initial construction had
been completed.  On one hand, the record contains a declaration
from Chandler stating that the subject property "has been at all

times material hereto my principal dwelling." Chandler Decl.
¶ 5. This statement, which Defendants have not challenged, tends
to indicate that the transaction took place after initial
construction had been completed. Yet on the loan application,
Chandler gave her address as 44-102 Kalenakai Place, which
appears to be a different (if neighboring) property from the
subject property at 44-097 Kalenakai Place. Pl.'s Ex. 4. This
tends to indicate that Chandler was not yet living at the subject
property when she applied for the loan, despite the statement in
her declaration.

In sum, the Court cannot determine at this time whether
the subject transaction was a "residential mortgage transaction"
for which rescission under TILA is unavailable. Nonetheless, for
purposes of this order, the Court assumes that rescission under
TILA is available.[16]

---

[16] Chandler asserts that TILA rescission is also available
under 15 U.S.C. § 1636, but as Defendants note, that statute was
repealed decades ago. The Court will assume that Chandler's
error was typographical, not intentionally misleading. As
Defendants further note, the similar statutory language now
contained in 15 U.S.C. § 1635(i) is subject to the exemptions in
§ 1635(e). See Ramos v. Countrywide Bank, FSB, No. 2:09-CV-449
TS, 2009 WL 3584327, at *3 (D. Utah Oct. 26, 2009) ("[T]he right
of rescission contained in 15 U.S.C. § 1635—which necessarily
includes § 1635(i)—does not apply to 'residential mortgage
transactions.'"); cf. Whitby v. Lime Fin. Servs., Ltd., No. 09-
cv-1565-PAB, 2009 WL 4016634, at *3 n.3 (D. Colo. Nov. 18, 2009)
(collecting cases in accord with Ramos but declining to reach the
question); Uy v. Wells Fargo Bank, N.A., Civ. No. 10-00204 ACK-
RLP, 2011 WL 1235590, at *7 n.18 (D. Haw. Mar. 28, 2011) (same).
But cf. Zakarian v. Option One Mortg. Corp., 642 F. Supp. 2d
(continued...)

In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind.  See 12 C.F.R. § 226.23(b). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose several matters, including the date on which the rescission period expires.  Id.; see also 12 C.F.R. § 226.17(a) (creditor shall make disclosures clearly and conspicuously in writing, in a form that the consumer may keep).  "Even a purely technical violation of TILA's disclosure provisions, including the failure to provide a borrower with two copies of the notice that includes the correct date the rescission period expires, extends the duration of the right to rescind for three years."  Cavaco v. Mortg. Elec. Registration Sys., Inc., Civ. No. 09-00586 SOM-BMK, 2011 WL 1565979, at *3 (D. Haw. Apr. 25, 2011) (citing Semar, 791 F.2d at 703-05).

Here, Chandler entered into the subject loan transaction on February 23, 2007, and asserted her right to rescind on February 17, 2010 (i.e., within three years).  See Pl.'s CSF ¶¶ 1, 14; Defs.' Exs. A, I.  Consequently, Chandler's

16/ (...continued)
1206, 1214-15 (D. Haw. 2009) (declining to reach the question where the defendant did not dispute the plaintiff's interpretation of § 1635(i) and there was a genuine issue of material fact as to whether there was a foreclosure proceeding in progress).

notice of rescission was timely if, as Chandler contends,
Defendants did not provide the requisite notice of right to
rescind or material disclosures.

Defendants argue that Chandler's notice of rescission
was untimely because "[t]he facts demonstrate that [Chandler] was
apprised of her right to rescind and received the required
disclosures." Motion at 10. In particular, Defendants claim (1)
that Chandler's signed acknowledgment of receipt of two copies of
the TILA Disclosures and Cancellation Notices creates a
"rebuttable presumption" that the disclosures were made and (2)
that Chandler has failed to rebut this presumption. See id.;
Reply at 6-10; see also 15 U.S.C. § 1635(c) ("Notwithstanding any
rule of evidence, written acknowledgment of receipt of any
disclosures required under this subchapter by a person to whom
information, forms, and a statement is required to be given
pursuant to this section does no more than create a rebuttable
presumption of delivery thereof.").

The Court finds that Chandler's declaration rebuts the
presumption of delivery and creates a genuine issue of fact as to
whether she was provided with the requisite notices and
disclosures. See Chandler Decl. ¶¶ 9-10; Cappuccio v. Prime
Capital Funding, 649 F.3d 180, 189 (3d Cir. 2011) ("[T]he
testimony of a borrower alone is sufficient to overcome TILA's
presumption of receipt."); Cavaco, 2011 WL 1565979, at *4

("Cavaco's affidavit creates a genuine issue of fact as to whether she received copies of the TILA disclosures, as Cavaco denies receipt and describes her loan closing procedure as having given her no time to read what she was signing, implying that she did not know she was acknowledging receipt of the TILA disclosures."); Rodrigues v. Newport Lending Corp., Civ. No. 10-00029 HG-LEK, 2010 WL 4960065, at *6 (D. Haw. Nov. 29, 2010) ("Plaintiffs' declaration rebuts the presumption of delivery, creating a genuine issue of fact as to whether Plaintiffs were given copies of the disclosures required under TILA." (citing Stutzka v. McCarville, 420 F.3d 757, 762 (8th Cir. 2005); and Iannuzzi v. American Mortgage Network, Inc., 727 F. Supp. 2d 125, 135-36 (E.D.N.Y. 2010))); cf. Whitlock v. Midwest Acceptance Corp., 575 F.2d 652, 653 (8th Cir. 1978) (holding that appellants failed to rebut prima facie proof of delivery because they "did not offer any support for their [complaint's] allegations [of non-delivery] by affidavit or deposition"). But see Marr v. John Does 1-5, No. 09-CV-228, 2011 WL 382133, at *3-6 (E.D. Wis. Feb. 3, 2011); Sias v. Washington Mut. Bank, No. 3:10-CV-43, 2010 WL 1223923, at *2 (E.D. Tenn. Mar. 23, 2010) ("A plaintiff's assertions that she received one copy, rather than the required

two copies, of a particular notice will be insufficient to rebut [the § 1635(c)] presumption.").[17/]

Accordingly, Defendants are not entitled to summary judgment on the ground that Chandler's TILA rescission claim is untimely.

In their Reply, Defendants further argue that "[e]ven if timely, [Chandler] still has no viable rescission claim. Rescission cannot be enforced when the borrower cannot comply with her rescission obligations, i.e., repayment of the money loaned." Reply at 10-11.

The Court has "the discretion to condition rescission on tender by the borrower of the property he had received from the lender." Yamamoto v. Bank of New York, 329 F.3d 1167, 1171 (9th Cir. 2003). The exercise of that discretion depends on "the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the

_____

[17/] In addition to relying on her declaration, Chandler attempts to rebut the presumption of delivery by submitting Exhibit 7, which is a copy of the Cancellation Notice that does not have the cancellation deadline filled in. See Pl.'s Ex. 7; Chandler Decl. ¶ 10; Opp'n at 4. The Court does not consider Exhibit 7. As Defendants argue, the exhibit is not adequately authenticated. See Reply at 8-9. Chandler does not declare that Exhibit 7 is a true and correct copy of the only Cancellation Notice that she received from Defendants (i.e., what she claims it is). See Chandler Decl. ¶ 10; Petroleum Sales, Inc. v. Valero Refining Co., No. C 05-3526 SBA, 2006 WL 3708062, at *7 (N.D. Cal. Dec. 14, 2006) (finding that a declarant failed to authenticate a letter because he stated that he received such a latter without swearing it was a true and correct copy thereof).

Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act." Id.

In this case, particularly given the length of time that has passed since the transaction occurred, and the large cash component of the loan, the Court finds that it would be appropriate to condition rescission on a showing that Chandler is able to tender. At the hearing, the Court directed Chandler to supplement the record with evidence of her ability to do so. Chandler's supplement failed to address her ability to tender in any way, an omission the Court finds troubling.

Yet one problem that Chandler's attorney identified at the hearing is salient. There is uncertainty concerning the interests in the note and mortgage of various financial institutions, including Defendants as well as non-parties BOA and U.S. Bank. It is not clear to whom Chandler would be required to make her tender, or, in the event that multiple institutions are entitled to a tender, in what proportion. It appears to the Court that the question of rescission cannot be fully addressed without participation by the aforementioned non-parties.

The Court notes that Chandler has made no attempt to include those institutions as parties to this case, even though Chandler has been aware of BOA's interest, at least, since before she filed the complaint in this action. The complaint was filed on June 17, 2010, almost a month after the Notice under Fair Debt

Collection Practices Act was sent to Chandler on behalf of BOA. Indeed, at the hearing Chandler claimed that the action was filed in response to that notice. Nor have Defendants attempted to bring in other parties, despite their position that they are only a servicer of the loan.

In any event, the Court finds that it would be premature at this time to award summary judgment to Defendants based on Chandler's failure to demonstrate an ability to tender. For purposes of this order, given the uncertainty concerning the ownership of the note, the Court finds that there remains a genuine issue of material fact as to Chandler's ability to tender. The motion for summary judgment is therefore DENIED as to Chandler's claim for rescission under TILA.

Within thirty days of the filing of this order, Chandler is DIRECTED to join to this action BOA, U.S. Bank, and any other party whose presence is required for the Court to accord complete relief among the parties. See Fed. R. Civ. P. 19(a)(1)(A).

### 2.        Statutory Damages

TILA also permits claims for damages. See 15 U.S.C. § 1640(a). Only creditors, and in some instances assignees, are subject to civil liability for damages under TILA. See id.[18]

---

[18] TILA defines a creditor as:

(continued...)

Specifically, assignees may be held liable for damages if the disclosure violations made by the original lender are "apparent on the face" of the disclosure documents. 15 U.S.C. § 1641.[19/]

TILA requires that borrowers bring their claims for damages "within one year from the date of the occurrence of the violation," unless the claim is asserted "as a matter of defense by recoupment or set-off." 15 U.S.C. § 1640(e). The Ninth Circuit has clarified that this period runs "from the date of consummation" of the transaction, which generally is defined as the date on which the money is loaned to the debtor. <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir. 1986).

Here, Chandler alleges a number of TILA violations that occurred when her loan was originated in February 2007. <u>See</u> Compl. ¶¶ 9-11 (alleging, <u>inter alia</u>, that Washington Mutual and ERMS falsified Chandler's gross monthly income on the

---

[18/] (...continued)
[A] person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . .

15 U.S.C. § 1602(f).

[19/] 15 U.S.C. § 1641(a) states that "[a]ny civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement."

Application, "misrepresented to [her] and misled her as to the terms of the 2007 Note," required her to sign the closing documents without adequate time to review them, failed to deliver two copies of the Cancellation Notice, and charged an excessive commission and title insurance fee). Because Chandler filed her complaint in June 2010, more than one year after these alleged violations occurred, her TILA damages claim is time-barred to the extent it is based on such violations.[20]

However, Chandler also contends she is entitled to damages on account of Defendants' improper failure to rescind the subject loan as Chandler requested in February 2010. See Compl. ¶¶ 12-15. Because Chandler filed her complaint within one year of this alleged violation, her TILA damages claim based on this violation is timely. See Williams v. Rickard, Civ. No. 09-00535 SOM-KSC, 2010 WL 2640102, at *6 (D. Haw. June 30, 2010); see also Haymer v. Countrywide Bank, FSB, No. 10 C 5910, 2011 WL 3205365, at *2 (N.D. Ill. July 28, 2011) ("[I]f Haymer eventually establishes her right to rescind the 2009 transaction, BoA could be liable for statutory damages based on its wrongful refusal to rescind the loan.").

_____

[20] Courts may extend the statute of limitations if the one-year rule would be unjust or would frustrate TILA's purpose. See King, 784 F.2d at 915. As Defendants point out, however, Chandler neither alleges nor argued in her opposition that equitable tolling is appropriate here. Reply at 6 n.6.

In sum, the motion for summary judgment is GRANTED as to Chandler's TILA damages claim to the extent the claim is based on conduct occurring at origination, but DENIED to the extent the claim is based on Defendants' failure to rescind the subject loan.

## C.        Unfair and Deceptive Trade Practices Act Count

The complaint's third count seeks rescission and damages on the ground that Defendants violated UDAP.  Compl. ¶ 18.  Chandler's UDAP claim relies, at least in part, on the same conduct that underlies her TILA claim.  See id. ¶¶ 14-15, 18.  Chandler's opposition also argues that the subject transaction violated UDAP because it involved a "predatory subprime mortgage" loan that was "made without regard to the borrower's income and/or ability to make the payments."  See Opp'n at 15-17.  Defendants argue that Chandler's UDAP claim is preempted by TILA; that Defendants are not liable for the wrongful acts of Washington Mutual or ERMS; that rescission is inappropriate because Chandler cannot tender the loan proceeds; and that no unfair or deceptive practices occurred during origination.  See Motion at 12-16; Reply at 11-13.  The Court finds that Defendants are entitled to summary judgment as to Chandler's claim for damages under UDAP, but not as to Chandler's claim for rescission under UDAP.

UDAP § 480-13 states that "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by [H.R.S. ch. 480] . . . [m]ay sue for damages sustained by the person," including treble damages, and "[m]ay bring proceedings to enjoin the unlawful practices." H.R.S. §§ 480-13(a)(1),(2).[21/]  There are "three elements essential to recovery under H.R.S. § 480-13: (1) a violation of H.R.S. chapter 480; (2) injury to the plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages."  Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc., 148 P.3d 1179, 1215-16 (Haw. 2006) (footnote omitted).

H.R.S. § 480-2 provides, in relevant part, that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." H.R.S. § 480-2(a).  In interpreting H.R.S. § 480-2, Hawai'i courts have held that "'[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  Rosa v. Johnston, 651 P.2d 1228, 1234 (Haw. App. 1982) (citation omitted).  A deceptive practice is defined as "an

---

[21/] Apart from affording damages and injunctive relief, H.R.S. ch. 480 also declares that "[a]ny contract or agreement in violation of [H.R.S. ch. 480] is void and is not enforceable at law or in equity."  H.R.S. § 480-12.

act causing, as a natural and probable result, a person to do that which he would not otherwise do." <u>Eastern Star, Inc. v. Union Bldg. Materials Corp.</u>, 712 P.2d 1148 (Haw. App. 1985). "However, . . . actual deception need not be shown; the capacity to deceive is sufficient." <u>Id.</u>

Defendants argue that Chandler's UDAP claim fails for four distinct reasons. First, Defendants argue that Chandler's UDAP claim is preempted by TILA because it "is premised on the same allegations of wrongful conduct underlying her TILA claim; specifically, WAMU and ERMS's actions and representations in originating the [subject loan]." Motion at 14; Reply at 11-12. To the extent Chandler's UDAP claim is based on TILA violations, the Court agrees. <u>See Kajitani v. Downey Sav. & Loan Ass'n</u>, 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008) ("[T]o the extent the Kajitanis' state law claims rest on TILA violations or concern subject matters explicitly preempted in 12 C.F.R. § 560.2(b), those claims are clearly preempted."). But Chandler's UDAP claim is also "based on circumstances beyond TILA violations such as alleged fraud in the loan consummation process," so TILA preemption does not justify granting summary judgment on the UDAP claim in its entirety. <u>See Skaggs v. HSBC Bank USA, N.A.</u>, Civ. No. 10-00247 JMS-KSC, 2011 WL 3861373, at *9 n.6 (D. Haw. Aug. 31, 2011); <u>Beazie v. Amerifund Fin., Inc.</u>, Civ. No. 09-00562 JMS-

KSC, 2011 WL 1437888, at *13 (D. Haw. June 16, 2011); Chandler
Decl. ¶¶ 7-9.

Second, Defendants argue that "there is no vicarious
liability for UDAP damages for parties not involved in the
wrongful conduct," and that Chandler "does not allege that
[Defendants] committed any unfair or deceptive trade practices."
Motion at 14-15; Reply at 12-13. The Court agrees that
Chandler's UDAP count fails to the extent it seeks damages,
because "no evidence indicates [Defendants] participated in the
loan transaction or had any knowledge of any alleged misconduct
in the loan process." Skaggs, 2011 WL 3861373 at *5. And while
Defendants are "assignee[s] of the [N]ote and [M]ortgage, 'there
is no liability [for damages] under [H.R.S.] § 480-2 merely
because one is an assignee.'" Id. (citation omitted); see also
Araki v. Bank of America, Civ. No. 10-00103 JMS-KSC, 2010 WL
5625970, at *5-7 (D. Haw. Dec. 14, 2010).

On the other hand, "[w]hile not rendering an assignee
'liable,' an HRS Chapter 480 claim for rescission may stand
against a subsequent assignee, if there are sufficient grounds
for rendering the note and mortgage void." Skaggs, 2011 WL
3861373 at *5 n.2; see H.R.S. § 480-12 ("Any contract or
agreement in violation of this chapter is void and is not
enforceable at law or in equity."). Notwithstanding the lack of
evidence that Defendants violated Chapter 480, the Note and

Mortgage may be rendered "'void and unenforceable' based on certain types of unfair or deceptive acts or practices committed by others in the loan consummation process." Skaggs, 2011 WL 3861373 at *7.

Third, Defendants argue that Chandler is not entitled to UDAP rescission because she "makes no allegation—either in her Complaint or in her letter demanding rescission—or provides any evidence that she is willing and able to tender." Motion at 15-16; Reply at 13. The Court declines to award summary judgment on this basis for the reasons discussed supra Part IV.B.1.

Finally, Defendants argue in their reply that "the admissible evidence establishes that no unfair or deceptive practices occurred during the origination of the loan." Reply at 12. The Court disagrees. Chandler's declaration provides admissible evidence that unfair or deceptive practices occurred during origination such that rescission may be appropriate under UDAP. See Chandler Decl. ¶¶ 7-9 (stating, inter alia, that Washington Mutual and ERMS falsified her loan application, misrepresented and changed the Note's terms, and did not provide Chandler with adequate time to read and understand the terms of the closing documents); Pl.'s Ex. 5 (letter from ERMS incorrectly stating that Chandler's monthly payments would not, in the loan officer's "understanding," have a "large change" for "at least ten (10) years").

Defendants' argument relies on their claim that Chandler received the requisite TILA disclosures. <u>See</u> Reply at 12 (noting that Chandler's opposition does not "dispute the fact that [Chandler] received the TILA disclosure statement and the [Cancellation Notice], or that she signed and acknowledged receiving two copies of the [Cancellation Notice]"). But the Court has already determined that Defendants are entitled to summary judgment on Chandler's UDAP claim to the extent that claim is based on alleged TILA violations. The UDAP claim survives summary judgment "based on circumstances beyond TILA violations such as alleged fraud in the loan consummation process." <u>Skaggs</u>, 2011 WL 3861373, at *9 n.6.

In sum, the motion for summary judgment is GRANTED as to Chandler's claim for damages under UDAP, but DENIED as to Chandler's claim for rescission under UDAP.

**D.** **Injunctive Relief Act**

The complaint's fourth count seeks an injunction preventing any transfer of title to the Note and Mortgage. Compl. ¶ 19. Chandler's opposition argues that injunctive relief "is clearly the appropriate means of preventing a wrongful nonjudicial foreclosure which in fact was in process when Chandler cancelled her loan transaction." Opp'n at 33. Chandler further contends that one can state a viable independent claim for injunctive relief, and that her claim for injunctive relief

is ripe and not moot.  See id. at 33-35.  Defendants argue that
there is no such thing as an independent claim for injunctive
relief, and that Chandler "falls well short of establishing the
basis for an injunction" in any event.  Motion at 16-17; Reply at
13-15.  The Court finds that Defendants are entitled to summary
judgment as to Chandler's claim for injunctive relief.

       As Defendants argue, it is well-settled "that
injunctive relief is only a possible remedy if [Chandler]
succeeds on one of [her] independent causes of action; it is not
its own cause of action."  Beazie v. Amerifund Fin., Inc., Civ.
No. 09-00562 JMS-KSC, 2011 WL 1437888, at *5 (D. Haw. June 16,
2011) (collecting cases).  Moreover, Chandler "offers no evidence
to show that she has been irreparably harmed, that equity favors
her, or that an injunction (of a nonexistent nonjudicial
foreclosure) is in the public interest."  Reply at 15; see Winter
v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("A
plaintiff seeking a preliminary injunction must establish that he
is likely to succeed on the merits, that he is likely to suffer
irreparable harm in the absence of preliminary relief, that the
balance of equities tips in his favor, and that an injunction is
in the public interest.").  As Defendants point out, Chandler
offers no evidence that either JP Morgan Chase or Chase Home
Finance ever initiated foreclosure proceedings against Chandler
or threatened to do so.  See Opp'n at 33-34; Reply at 13-14

& n.11.  The threat of foreclosure that Chandler received indicated that JP Morgan Chase was the servicer of the debt, but that non-party BOA was the creditor.  Pl.'s Ex. 12.

In sum, the motion for summary judgment is GRANTED as to Chandler's claim for injunctive relief.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS in Part and DENIES in Part Defendants' motion for summary judgment.  Specifically:

First, Defendants are not entitled to summary judgment on the basis of the P & A Agreement.  There are genuine issues of material fact as to whether Defendants acquired Chandler's loan via that agreement.

Second, Defendants are not entitled to summary judgment as to Chandler's claim for rescission under TILA.  There is a genuine issue of material fact as to whether Chandler was provided with the requisite notices and disclosures, which precludes summary judgment both on the question of whether the claim is timely and on the merits of the claim.  There are also genuine issues of material fact as to Chandler's ability to tender and as to whether the transaction was a "residential mortgage transaction" for purposes of 16 U.S.C. § 1635(e).

Third, Defendants are entitled to summary judgment as to Chandler's TILA damages claim, although only to the extent it

is based on conduct occurring at origination, as claims based on that conduct are time-barred.  To the extent Chandler seeks damages based on Defendants' allegedly improper failure to rescind the subject loan, which failure occurred within one year of Chandler's filing of the complaint, the claim is timely and survives summary judgment.

Fourth, Defendants, as assignees who evidently did not participate in the subject loan's origination (or have knowledge of any fraud that occurred at origination), are entitled to summary judgment as to Chandler's claim for damages under UDAP.

Fifth, Defendants are not entitled to summary judgment as to Chandler's claim for rescission under UDAP.  Defendants' status as assignees does not preclude rescission under UDAP.  And again, there is a genuine issue of material fact as to Chandler's ability to tender.

Sixth, and finally, Defendants are entitled to summary judgment as to Chandler's claim for injunctive relief.  It is well-settled that there is no independent cause of action for injunctive relief.  And Chandler does not otherwise show that an injunction would be appropriate in light of her other claims.  In particular, she offers no evidence that Defendants ever initiated foreclosure proceedings against her or threatened to do so.

Within thirty days of the filing of this order, Chandler is DIRECTED to join to this action BOA, U.S. Bank, and

any other party whose presence is required for the Court to accord complete relief among the parties.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, December 9, 2011.



_____
Alan C. Kay
Sr. United States District Judge

Chandler v. Washington Mutual Bank, F.A., Civ. No. 10-00487 ACK-KSC: Order (1) Granting in Part and Denying in Part Defendants JP Morgan Chase, N.A., and Chase Home Finance, LLC's Motion for Summary Judgment; and (2) Directing Plaintiff to Join Additional Parties